UNITED STATES, Appellee

v

LOWELL E. TRAWEEK, JR., Private,
U. S. Army, Appellant

16 USCMA 50, 36 CMR 206

No. 18,822

March 4, 1966

*First Lieutenant Paul V. Melodia* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk, Lieutenant Colonel Martin S. Drucker,* and *Captain Thomas E. Towe.*

*Captain Robert B. Lee* argued the cause for Appellee, United States. With him on the brief were *Colonel Joseph J. Crimmins* and *Lieutenant Colonel Francis M. Cooper.*

### Opinion of the Court

KILDAY, Judge:

Accused was tried by general court-martial on charges of willful destruction of a United States military helicopter, wrongful appropriation of the same, and sleeping on post while guarding it, in violation of Articles 108, 121, and 113, Uniform Code of Military Justice, 10 USC §§ 908, 921, and 913, respectively. The court members convicted him of negligent destruction and of wrongful appropriation of the helicopter, but acquitted him of sleeping on post. Accused was sentenced to bad-conduct discharge, total forfeitures, confinement at hard labor for one year, and reduction to the grade of Private E–1.

The convening authority approved the findings and punishment, but a board of review found the evidence insufficient to establish wrongful appropriation and, accordingly, dismissed that charge. The board affirmed only the finding of negligent destruction of the helicopter and so much of the sentence as provides for confinement at hard labor for eight months, forfeitures of $55.00 pay per month for the same period, and reduction.

Thereafter, accused petitioned this Court for grant of review, and we elected to hear his appeal in order to consider arguments on two issues. The first involves the claim that the evidence shows as a matter of law accused's confession was inadmissible,

and the second concerns the law officer's instructions to the court members for consideration of accused's confession.

Since the facts upon which the issues turn are those surrounding accused's pretrial admission of guilt, there is no occasion to dwell in any detail on the circumstances of the offense for which he stands convicted. It is sufficient to note that while accused's unit was on a field exercise, he was assigned to guard a medical evacuation helicopter. The evidence indicates accused did not know how to operate one. When his relief arrived at the guard post shortly before the end of accused's tour of duty, the helicopter was lying on its side. It was smashed and shattered, and the rotor blades of the machine were bent. A harmonica belonging to accused was found in the debris of the wreckage. Subsequently, accused executed the statement which the issues before us concern. In it accused admitted he had uncovered the helicopter and untied its blades, then started its motor. He asserted he did so because he was cold and was trying to turn on the heater to get warm. In the course of this activity, accused confessed that the helicopter moved, went out of control, and crashed to the ground.

I

As to the first issue, the defense argues accused's extrajudicial statement was inadmissible for two reasons. One branch of the contention asserts that under the totality of the circumstances as shown by the uncontradicted evidence, the accused's confession was involuntary as a matter of law. In the second aspect of this claim, appellate defense counsel urge that the uncontradicted evidence shows accused requested counsel before making the statement, but was not afforded reasonable opportunity to obtain advice or representation by a lawyer.

The record provides some support for the position argued by appellate defense counsel. Thus, the facts show that accused had been up since early morning on the day in question, and he had been drinking during the afternoon. Further, accused took a portion of a bottle of rum with him when he went on guard about 5:30 p.m. When the relief guard discovered the crashed helicopter shortly before 9:30 in the evening, accused was found lying a short distance from the wreckage, unconscious. It was determined he was not injured and accused regained consciousness after a few minutes. Accused's commanding officer, however, who was a doctor, saw him at that time, and testified accused was obviously under the influence of alcohol and appeared shaky and tired.

At approximately 10:30 that night, Criminal Investigations Detachment agents arrived at the site. After investigation on the scene, accused was ordered to accompany them to a motel suite which served as their office, as they, too, were on the field exercise. Accused's commanding officer sought to accompany him, but the agents refused to permit this. Some period of time elapsed between the time the investigators first got to the scene until they departed for the motel. The party arrived there and questioning commenced at about 1:00 or 1:30 o'clock in the morning. At the motel four agents—all older and superior in rank to him—took turns interrogating accused during the early morning hours, until his statement was obtained and reduced to writing about 3:30 or 4:30 a.m.

Accused claims he was suffering from a hangover, was tired and woozy, and couldn't think straight. Nonetheless, he repeatedly refused to admit any wrongdoing. The interrogation, however, dragged on. Accused stated further that one of the agents—a much larger man than accused—threatened him by suggesting he could beat the truth out of him with no one being the wiser. Another investigator allegedly threatened accused with prosecution for making a false statement, and accused claimed an agent told him he was drunk. Also, accused asserted that the agents sluffed off his requests for the assist-

ance of a lawyer. Finally, in desperation and because he was exhausted, accused said he made the statement.

In light of the above recited facts, appellate defense counsel contend it is obvious accused's confession was not voluntary. Rather, it is urged that accused's statement was the product of a tired and sick man, willing to do anything to get some rest, and who had been effectively denied the opportunity to contact legal counsel as he requested.

If the situation in its totality were fairly reflected by the foregoing facts, the defense position on this issue would indeed be strong. See, generally, United States v Brown, 13 US CMA 14, 32 CMR 14; United States v Houston, 15 USCMA 239, 35 CMR 211; and the numerous authorities collated in those two cases. There is, however, more to the picture than the evidence heretofore recited.

Thus, appellate Government counsel invite our attention to other evidence of record which will fairly support a conclusion different than that espoused by the defense. Although accused had arisen early in the morning, there is evidence he had rested during the day. With regard to accused's drinking, there is conflicting evidence as to his state of intoxication earlier, but two or three hours elapsed from the time the crash was discovered until accused was taken away by the Criminal Investigations Detachment agents. Even earlier, he was not out of touch with reality, but by that time, according to his commanding officer, accused was fairly normal in appearance and reaction and did not seem to be under the influence of alcohol. Such change during the intervening period was, according to the doctor, quite natural in light of the circumstances. Moreover, not one of the investigators, according to their testimony, believed accused was intoxicated at the time of their interrogation, and it was expressly denied accused had been told by them he was drunk. There is also other evidence that, to the contrary, accused was mentally alert and re-sponsive. He was shown to be of medium high intelligence.

The agents claimed that accused was made comfortable at the motel, furnished food and coffee, and that no coercion, inducement, or abuse of any sort was used against him. They denied specifically that he was ever threatened with violence or with prosecution for giving a false statement. Further, the investigators asserted accused was appropriately warned in accordance with Article 31, Uniform Code of Military Justice, 10 USC § 831. They denied that, during the period of perhaps three hours in which the interview was conducted, they engaged in relentless and protracted questioning of accused. Rather, they said the topics of conversation also covered many general subjects. In short, their interrogation tactics were more subtle and involved informal discussion; their questioning was not "high-powered," and did not focus on the suspected offenses alone.

Further, it was brought out regarding the interview, generally, that normally an accused would, during the middle of the night, be returned to his unit to sleep except in important cases. The investigators, however, considered that accused's case fell within that exception.

As to accused's claim he attempted to obtain advice from an attorney, the Criminal Investigations Detachment agents readily admitted from the witness stand accused had done so, twice or perhaps even three times. However, they steadfastly maintained that on each occasion accused mentioned a lawyer, they immediately terminated the interview and told him he was free to use the telephone to contact a civilian lawyer, or that a Judge Advocate General Corps officer they believed to be on the field exercise could also be made available. The criminal investigators insisted that accused, when so advised, told them he had changed his mind, telling them, at least two or three times, in substance, "Well it makes no difference, I don't think I need one," "No, it was just a thought, forget it," "Well, never mind, forget

it," or "No, never mind, I don't need one." Thus the Government argues that although the evidence relative thereto may be contested, the record will support the conclusions that the provisions of Article 31 were complied with and that accused's statement was made voluntarily. Further, it is contended, the record will support a finding that accused was aware of his right to consult with counsel and, instead of being misadvised or misled in the premises, was afforded ample opportunity to do so.

With the record in the posture reflected by the above recitation, we must reject this assignment of error. The board of review considered this same contention, and concluded that the conflict in testimony raised issues to be decided by the triers of fact both as to the voluntariness of accused's statement, and on the question of denial of counsel. We agree and, accordingly, hold the law officer did not err in admitting accused's confession into evidence. United States v Houston, supra.

Before leaving this issue, however, we deem it appropriate to comment on the investigative method used in the case at bar. True it is that the Criminal Investigations Detachment agents stated general policy was otherwise and that they would not have interrogated accused,[1] as they did, during the wee hours of the morning except that they felt this was an important case. We seriously commend, however, to the deliberate consideration of law enforcement authorities, the following observation made by the board of review in the case at bar, which we fully share:

"Although we reach the above conclusions on these issues we would note that while the adage of 'striking while the iron is hot' has its value in certain situations, we are not placing our stamp of approval on the investigative methods used in this case and we fail to

perceive any need in the situation that existed for any such procedure. The accused was not only the prime suspect, he was the only one, and he obviously was in military control and wasn't going to disappear. Consequently, we believe a far more appropriate procedure herein would have been to have interrogated this accused at a reasonable hour on the morning of the 21st of October rather than during the period 0130 to 0400."

Among the obvious factors indicating the desirability of a different approach having been considered, under all the circumstances of the instant case, are the following. Accused was a young soldier, in the field on an exercise, and away from his base. The agents had refused to allow his company commander to accompany him, and he was without friends there. The locus of events was near a small town, where accused was unknown and where a civilian lawyer might not have been readily available by telephone at such a late hour when he expressed a desire for legal advice. In addition to those factors and the ones mentioned by the board of review, are accused's fatigue, his intake of alcohol, and the possible shock attendant to the traumatic incident he had evidently experienced. We do not find accused's statement to be inadmissible. Certainly, however, in light of all the circumstances, the agents might properly have postponed their interrogation until morning.

II

Having determined that accused's confession was not improperly before the court members, we next consider the law officer's instructions thereon, which the next issue concerns. His advice to the court-martial on the controverted issue of voluntariness generally was, we believe, correct. It appropriately submitted the questions of coercion, duress, unlawful inducement or influence, intoxication, warning, and understanding by accused of his

---

[1] His duty hours, we note, were essentially a "day shift," insofar as that term may properly apply in the military.

54

rights, and properly placed the burden of proof as to those matters. The law officer, however, instructed in a separate paragraph as to the matter of counsel. His charge to the triers of fact thereon, in its entirety, is as follows:

"Now, there has been evidence in this case and the accused has contended that during the interrogation he was denied the right to consult with counsel prior to making a statement. On the other hand, the CID agents admit that such a request was made but they contend that the accused voluntarily withdrew his request for advice from counsel. If you find from the evidence that the accused requested advice from counsel and did not withdraw his request for them prior to the time he made that statement, then you must disregard Prosecution Exhibit 7 in its entirety. Likewise, if you find that the accused did request counsel and thereafter knowingly, intentionally, and of his own volition—not as a result of compulsion—withdrew his request for counsel and further find that Article 31 has been complied with—as I have given it to you—by evidence submitted by the Government, then and only then may you consider Prosecution Exhibit 7 as evidence on behalf of the Government."

Appellate defense counsel point out the above-quoted advice does not state that the Government has the burden of proof with regard to the matter of counsel. It does not mention the doctrine of reasonable doubt, and is subject to the interpretation that the defense had the burden to establish affirmatively that accused's admitted request for counsel was not withdrawn, in order for the court members to disregard his confession.

In United States v Odenweller, 13 USCMA 71, 32 CMR 71, we were confronted with a similar situation. There this Court stated:

"It is settled military law that the United States has the burden affirmatively to establish the voluntari-

ness of a confession as a predicate for its receipt in evidence and consideration by the fact finders. United States v Spero, 8 USCMA 110, 23 CMR 334; United States v Jones, 7 USCMA 623, 23 CMR 87; Manual for Courts-Martial, United States, 1951, paragraph 140a. Once an issue is raised, therefore, concerning the voluntariness of a confession, it must affirmatively overcome the evidence of involuntariness and present proof sufficient to convince the court members that accused's statement was in fact voluntarily made. United States v Jones, supra; Litkofsky v United States, 9 F2d 877, 880 (CA2d Cir) (1925). And we further believe that it must so persuade the members beyond a reasonable doubt. See separate concurring and dissenting opinion in United States v Sanchez, 11 USCMA 216, 29 CMR 32, at page 223.

.   .   .   .   .   .   .   .

"The same principle was denominated 'the correct rule' in Patterson v United States, 183 F2d 687 (CA5th Cir) (1950), at page 690. We likewise conclude that voluntariness is required to be established beyond a reasonable doubt, and when that issue or one relating to denial of counsel is submitted to a military jury, it should be so informed. Indeed, we note the Department of the Army has for some time included such a requirement with regard to voluntariness in its model instructions. Appendix XXI, Department of the Army Pamphlet 27–9, Military Justice Handbook, The Law Officer, April 1958."

Comparing the law officer's instruction in the instant case with that set forth in Odenweller, and for the same reasons, we find it subject to the same infirmity. As in that case:

".   .   . there is here a fair risk that the court members were left with the erroneous impression that they must affirmatively find accused was denied counsel in order to reject his confession. As the proper principle requires the opportunity for con-

sultation affirmatively to be established beyond a reasonable doubt, it is clear that the law officer's instruction in this regard was prejudicial."

Accordingly, we hold that the law officer's instruction in the case at bar, as to the contested issue of whether accused abandoned his request for advice of counsel, was prejudicially erroneous. United States v Odenweller, supra. See also United States v Houston and United States v Brown, supra. Cf. United States v Sanchez, 11 USCMA 216, 29 CMR 32; United States v Smith, 11 USCMA 321, 29 CMR 137; United States v Erb, 12 USCMA 524, 31 CMR 110.

The decision of the board of review is, therefore, reversed. A rehearing may be ordered.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

Although I dissented in United States v Odenweller, 13 USCMA 71, 32 CMR 71, I would be willing to accept the decision in that case as determinative of the issue here if the "situation" was as "similar" to *Odenweller* as the majority indicate.

In *Odenweller*, none of the instructions on voluntariness mentioned the burden of proof or the degree of proof. As a result, a majority of the Court concluded the court members could have construed the instruction that they must "find" that a request for counsel "was made and denied" as imposing a burden upon the accused to satisfy them that he was denied "the opportunity for consultation before they need refuse to consider the statement." *Id.,* page 75. Here, there were repeated references to the burden of proof and the degree of proof.

The law officer prefaced all his instructions on the issue by indicating that the court members could "accept this statement as evidence" only if they "determine beyond a reasonable doubt" it was voluntary.

The law officer instructed the court members on the various factors they could consider in determining the voluntariness of the statement. The instruction on the counsel factor cannot, in my opinion, be properly separated from the instructions on the other factors; all were part of the same instructions on the one issue, namely, whether the court members could consider the statement in their deliberations as to the accused's guilt or innocence. Throughout, the law officer referred to the burden of proof, and the degree of proof. Immediately before that part of the instructions, which are quoted in the majority opinion, he said:

"... As I said, the prosecution has the burden to prove and satisfy you by legal and competent evidence beyond a reasonable doubt that they were voluntarily made and made under the provisions of Article 31. Unless you find that they were voluntarily made and you are sure that there was no threat given to the accused, then and only then may you consider them, otherwise you should reject them and disregard them completely as evidence in this case."

All instructions on the issue "stressed repeatedly" that the burden was on the Government to convince them that they must be satisfied beyond a reasonable doubt, as to its version of the conflict in the evidence. United States v Smith, 11 USCMA 321, 327, 29 CMR 137. I would, therefore, affirm the decision of the board of review.