UNITED STATES, Appellee

v

B. J. PENDERGRASS, Private First Class,
U. S. Army, Appellant

17 USCMA 391, 38 CMR 189

No. 20,514

February 16, 1968

*Captain John Wall Hanft* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Lieutenant Colonel Martin S. Drucker,* and *Captain Paul V. Melodia.*

*Captain Robert T. Mitchell, Jr.,* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick* and *Major John F. Webb, Jr.*

## Opinion of the Court

FERGUSON, Judge:

Tried by a general court-martial convened by the Commanding General, Twenty-Fifth Infantry Division, at Cu Chi, Vietnam, the accused was convicted of willful disobedience of an order to go to the field, in violation of Uniform Code of Military Justice, Article 90, 10 USC § 890, and sentenced to dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for one year, and reduction. The convening authority approved the sentence. The board of review approved only so much of the sentence as provided for confinement at hard labor for six months, forfeiture of $64.00 per month for a like period, and reduction. We granted accused's petition for review on three assignments of error, which will be hereinafter discussed.

### I

From the record, it appears that accused, on several occasions, failed to accompany his platoon on various patrols and operations against the enemy in Vietnam. Little or nothing had been done about this. On approximately July 10, 1966, he visited his battalion commander and presented him with a note in which he explained "he felt that he couldn't go out on operations any more and that he had been injustly [sic] inducted into the Army —pulled out of highschool in his senior year." The battalion commander counseled Pendergrass at length, informed him that he would investigate the matter of his induction, and told him that he was required to perform his duties until the matter was settled. In addition, the commander advised the accused that he was to accompany his unit on an operation which was to begin on the same evening.

The accused did not go on this operation. In consequence, the battalion commander imposed punishment on him under the provisions of Code, supra, Article 15, 10 USC § 815, on July 20, 1966. On this occasion, the commander again talked at length with accused, reminded him of his promise to investigate the circumstances of his induction, told him that he had taken steps to do so, and counseled him once more on the possible consequences of further misbehavior. He then specifically ordered the accused to go to the field with his unit on the following day.

The accused disobeyed this order, and such disobedience forms the basis of the charge of which he now stands convicted.

In his defense, the accused declared that he had been drafted while satisfactorily pursuing a course in his local high school and while under the age of twenty years. In June 1965, he completed his junior year satisfactorily. In August of that year, he informed his local Selective Service Board that he was unemployed and was planning to return to school for his senior year. When school opened a few weeks later, he did so. Nevertheless, in November 1965, he was inducted into the Army. He made no attempt to appeal his selection for service, nor did he protest his entry into the service. In basic training, however, he approached his superiors about the matter, and they promised to look into it. He heard nothing further. He again brought the situation to the attention of his commanders in Vietnam, as well as discussing it with the local Inspector General. All promised to investigate the circumstances, but they did not. In consequence, he determined he would not go on any more combat operations until it was settled that he was lawfully in the Army. Accordingly, he

disobeyed the battalion commander's order.

Other evidence was offered by the defense to substantiate this reason for accused's disobedience. In addition, appellate exhibits, consisting of the correspondence initiated by the battalion commander and replies thereto, indicate accused was, in fact, drafted while satisfactorily pursuing a course in his local high school and while under the age of twenty years. The Director of Selective Service, however, declared that "At no time, was there any information from the registrant or by a school that the registrant was enrolled."

II

Title 50, Appendix, United States Code, § 456(i)(1), provides:

"Any person who is satisfactorily pursuing a full-time course of instruction at a high school or similar institution of learning shall, upon the facts being presented to the local board, be deferred (A) until the time of his graduation therefrom, or (B) until he attains the twentieth aniversary of his birth, or (C) until he ceases satisfactorily to pursue such course of instruction, whichever is the earliest."

Appellate defense counsel urge that, under the provisions of this statute and the evidence, an issue was raised regarding whether the accused honestly believed he was not subject to the authority of his battalion commander because of his allegedly faulty induction into the Army and that he would not, if believed, be guilty of the offense of willful disobedience of the commander's order. Conceding that the law officer treated this issue as being before the court and instructed the members thereon, it is further urged, however, that such instructions were deficient in that they failed to place the burden on the prosecution to prove absence of an honest mistake beyond a reasonable doubt. See United States v Gilbert, 16 USCMA 446, 37 CMR 66, and United States v Traweek, 16 USCMA 50, 36 CMR 206.

In reply, the Government contends

the issue was not raised by the evidence and that, in any event, the instructions correctly placed the burden of proof on its shoulders.

We need not decide whether the testimony and evidence proffered by the accused placed mistake of fact in issue or whether this entire matter presented only a mistake of law, which would not have the effect for which accused contended. Suffice it to say the law officer determined the issue was raised below and instructed thereon. As the Government notes, his instructions were entirely proper as to the burden of proof, for they expressly included the following:

". . . The burden is on the prosecution to establish the accused's guilt by legal and competent evidence beyond a reasonable doubt. Consequently, unless you are satisfied beyond a reasonable doubt that the accused was not honestly and reasonably under this mistaken belief that he did not have to comply with the orders issued to him by his superior officer then you must acquit the accused."

The law officer then went on to explicate further on the defense of honest mistake and *inter alia*, noted again "this would exonerate the accused with respect to the willful disobedience involved here."

The express statement of the standard and other language used by the law officer is fully sufficient to apprise the court of the burden of the United States in the premises and to eliminate any possibility its members had the impression Pendergrass was required affirmatively to establish the honesty of his alleged mistake. Considered in context and as a whole, we find the instructions proper and the assignment without merit. United States v Stabler, 4 USCMA 125, 15 CMR 125; United States v Sippel, 4 USCMA 50, 15 CMR 50.

III

The accused next complains of the

**393**

failure of the law officer to advise the court-martial to disregard evidence of other misconduct with regard to determining an appropriate sentence. As noted above, evidence was adduced, particularly from the battalion commander, of numerous other instances in which Pendergrass failed to accompany his unit on combat operations. In recognition of this, the law officer advised the court, *prior to findings:*

"I might state that the only offense before this court is this allegation of willful disobedience on the 21st of July. Reference was made to prior acts will not be considered other than the counseling that was given as testified by."

The Government urges this instruction carried over and informed the court it also was not to consider such acts in reaching a sentence. We do not agree. It was the duty of the law officer once more to call the attention of the court to this matter in connection with reaching a proper sentence, and his failure to do so was prejudicial error. United States v Gewin, 14 USCMA 224, 34 CMR 4; United States v Turner, 16 USCMA 80, 36 CMR 236.

Finally, appellant contends the argument of the trial counsel on the sentence was improper in that it branded the accused as a coward, "an unresponsible citizen . . . an example of shameless dishonor . . . a coward who would let his own fellow soldiers go out into combat and he stay behind in bed . . . a person . . . so low as to refuse to obey the commands to move into combat given to him by his battalion commanding officer." The argument contains much more of a similar stripe and urges the imposition of a maximum penalty upon a "coward that protects his life as his comrades go into battle to die."

We have repeatedly noted that a trial counsel may, in arguments, strike hard blows, so long as they are fairly based on the evidence before the court. United States v Hutton, 14 USCMA 366, 34 CMR 146; United States v Neal, 12 USCMA 723, 31 CMR 309. And, un-doubtedly, in the ordinary case, it may be inferred that the motive for refusal to go into combat is fear or cowardice. Cf. United States v Yarborough, 1 USCMA 678, 5 CMR 106. Hence, it would ordinarily appear to be proper to brand one a coward when he failed to accompany his comrades on dangerous missions against the enemy. Nevertheless, under the posture of the evidence in this particular case, the argument was clearly improper and inflammatory.

Thus, unlike the normal record of disobedience in a combat situation, it appears conceded here that the motivation of the accused was not cowardice but a belief on his part that he was not properly in the armed services, as well as disgust at the frustration of his continued, lawful efforts to seek clarification of his status. The testimony of his leaders reflects that he had previously performed creditably in combat; that he had repeatedly stated his belief he was not subject to military service; that he had as repeatedly sought the assistance of his superiors, as well as that of the Inspector General; and, though, on its face, he had a real complaint, nothing was done for him at all, even in the way of inquiry. Indeed, his most direct noncommissioned leaders indicated their belief accused had no fear, that he was motivated by his particular complaint, and that they would welcome him back into the unit. Cast in the background of a unit which had done nothing about accused's previous refusals to obey similar orders, it was hardly open to the trial counsel to brand Pendergrass as a coward unfaithful to his obligation to his Nation and as an example of "shameless dishonor." In short, there is no evidence to support such assertions in this case, and every circumstance presented argues against such a conclusion. In light of these considerations, we hold the argument erroneous and conclude that the sentence should be reassessed in light of such error.

In sum, then, we find no error in the law officer's instructions regarding the burden of proof as to accused's alleged defense. His failure, however, to instruct the court members to dis-

regard the evidence of other, uncharged misconduct, and the trial counsel's erroneous argument, requires that we reverse the decision of the board of review and remand the case for curative action.

The decision of the board of review is reversed, and the record of trial is returned to the Judge Advocate General of the Army. The board may reassess the sentence or order a rehearing thereon.

Chief Judge QUINN and Judge KILDAY concur.