UNITED STATES, Appellee,

v.

Private First Class Angelo ZEIGLER, SSN 378–72–7728, United States Army, Appellant.

CM 440754.

U. S. Army Court of Military Review.

12 Nov. 1982.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Elliot J. Clark, Jr., JAGC, and Captain David M. England, JAGC, were on the pleadings for appellant.

Major John T. Edwards, JAGC, Captain Kenneth H. Clevenger, JAGC, and Captain James C. Underhill, Jr., JAGC, were on the pleadings for appellee.

Before McKAY, LEWIS and HANFT, Appellate Military Judges.

## OPINION OF THE COURT

HANFT, Judge:

Zeigler was convicted of rape, forcible sodomy and assault consummated by a battery. The adjudged and approved sentence is a Dishonorable Discharge, confinement at hard labor for twenty-five years, forfeiture of all pay and allowances, and reduction to the grade of Private E–1. Five errors are presented in this appeal.

### I

When Zeigler was apprehended for rape, he was advised of his rights by a police investigator. Zeigler requested legal counsel. Zeigler then remained in police custody for about six hours until he was again confronted by the police investigator who asked him, without readvising Zeigler of his rights, if he had changed his clothes. Zeigler replied that he had not. His undershorts were then seized. During the subsequent trial, Zeigler's statement was suppressed but his undershorts were not. Was the latter ruling correct?

■ We believe that it was. There is no question that Zeigler's apprehension was lawful, and we find that the seizure of the undershorts while Zeigler remained in cus-

tody was incident to that lawful apprehension. The six-hour hiatus between the apprehension and the seizure does not nullify the seizure. *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); *United States v. Caruso,* 358 F.2d 184 (2d Cir.), *cert. denied,* 385 U.S. 862, 87 S.Ct. 116, 17 L.Ed.2d 88 (1966). And even assuming that Zeigler's suppressed statement triggered the immediate seizure of the undershorts, we are convinced that "government agents possessed . . . evidence . . . that would have inevitably led to the discovery of the evidence and that the evidence would inevitably have been discovered in a lawful manner had not the illegality occurred". *United States v. Kozak,* 12 M.J. 389, 394 (C.M.A.1982).

### II

■■ Additional Charge II and its specification alleged a rape. As to that charge, the president of the court announced the following verdict:

Of the Specification of Additional Charge II: Not Guilty.

Of Additional Charge II: Not Guilty, but guilty of a lesser included offense under violation of Article 128.

The trial judge, who obviously had not examined the findings worksheet prior to the president's formal announcement in open court, then attempted a curative inquiry.

MJ: All right, now, on Additional Charge II that would be of the Specification, guilty, except the word, "rape"?

PRES: Yes, Your Honor, and substitute, "did commit an assault upon Private E–2 Cathy [W.] by striking her and choking her with his hands".

MJ: Of the Charge, not guilty of a violation of Article 120, but guilty of a violation of Article 128?

PRES: That's correct, Your Honor.

Still missing, however, is a formal finding of acquittal as to the excepted word "rape" and a formal finding of guilt as to the substituted words. Do the announced findings nonetheless constitute a proper ver-

dict? Yes, on two grounds. First, implicit in a finding involving exceptions and substitutions is a finding of not guilty of the matter excepted and a finding of guilty of the matter substituted. Second, the verdict clearly indicates the intention of the fact finders to convict Zeigler of assault consummated by a battery. *See generally United States v. Ricketts,* 1 M.J. 78 (C.M.A.1975).

### III

Zeigler avers that the trial judge erred by failing to dismiss Additional Charge II (rape) as being multiplicious for findings purposes with Charge I (rape). It is Zeigler's position that the two alleged rapes "arose from a single impulse, and were closely related in time and place".

■ The testimony of the victim, Cathy W., establishes that she and Zeigler went drinking in town on the evening of 20 September 1980. After midnight, they returned to their unit's field site and went to Cathy's truck where they talked for about an hour. Zeigler then put his arms around Cathy. She tried to push him away and they fell to the ground, struggling. Zeigler commenced to hit Cathy in the face and to choke her. He told her to remove her clothes, and hit her again when she refused. Zeigler then removed Cathy's pants, got on top of her and raped her. When Zeigler finished, Cathy got up and put on her pants. She was again grabbed by Zeigler who pulled her further down the road. Cathy broke away, but was caught by Zeigler. As Cathy described it, "He just started hitting me. Everything [sic] I would scream, he'd just keep choking me . . . and he started all over again. He took off my pants and he did it again".

We find that the first act of rape had completely terminated when the second act began. Zeigler's lust may have been continuous, but the resultant actions were not. Thus, the two rape charges were not multiplicious for any purpose. *See United States v. Harrison,* 4 M.J. 332 (C.M.A.1978); *United States v. Burney,* 21 U.S.C.M.A. 71, 44 C.M.R. 125 (1971).

### IV

Once again we venture into the abyss of trying to define the term "reasonable doubt". "[I]t would seem that the meaning of the phrase 'reasonable doubt' is obvious; and for the courts to attempt to explain it to the jury is to 'gild refined gold' or add another ray unto the sunlight". *Barker v. State,* 1 Ga.App. 286, 57 S.E. 989, 990–991 (1907). Put another way, "[t]o attempt to give a specific meaning to the word 'reasonable' would be 'trying to count what is not number, and to measure what is not space'. Steph.Cr.Law, p. 62". *State v. Smith,* 65 Conn. 283, 31 A. 206, 207 (1894).

■ In this case, the defense counsel proposed a definition of reasonable doubt which included the phrase, "a 'reasonable doubt' is a doubt which would cause a reasonably prudent person to *hesitate to act* in the most important and weighty of his own personal affairs". (Emphasis added). The trial judge, however, refused the requested instruction, and gave one of his own making which contained the phrase, "reasonable doubt is such a doubt that would cause a reasonably prudent person *not to act* in the more weighty and important matters relating to his own personal affairs". (Emphasis added). Was this reversible error?

The "hesitate to act" phraseology was approved, in dicta, by the United States Supreme Court in *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 139, 99 L.Ed. 150 (1954), and apparently the Court of Military Appeals would sanction its use. *United States v. Cotten,* 10 M.J. 260, 262 (C.M.A.1981). This Court, however, has been unable to find a single court opinion setting forth any reasonable basis for preferring the "hesitate to act" illustration, and we have held that there is no error in failing to give such an instruction even when requested. *United States v. Crumb,* 10 M.J. 520, 525 (A.C.M.R.1980). We have been adamant in our position. *United States v. Johnwell,* 11 M.J. 747, 752 n. 6 (A.C.M.R.1981). But why? The answer, we believe, was provided by Judge Garn, the author of the *Crumb* opinion.

Conceptually, and within the ken of human experience, people hesitate to act, before acting, with respect to important personal matters, even though, after careful reflection, they may not have any reasonable doubt that their ultimate decision to act is the proper course. The basic problem is that people normally do not make decisions by employing the proof beyond a reasonable doubt standard. Comparing the two is not very helpful and ... could be misleading. 10 M.J. at 525.

We believe that the "not to act" illustration given by the trial judge in this case is likewise confusing and misleading in its comparison of the decision making process in a criminal case with that of the decision making process concerning a person's important personal affairs. Additionally, a doubt which would cause one not to act is stronger than a doubt which would cause one merely to hesitate to act. Use of the stronger doubt would tend to reduce the prosecution's burden of proof. *See United States v. Tobin,* 576 F.2d 687, 694 (5th Cir.), *cert. denied,* 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978). Nonetheless, we believe that the reasonable doubt instruction when considered as a whole fairly reflects judicially approved concepts of reasonable doubt. That, combined with the overwhelming evidence of guilt in this case, provides the basis for our determination that Zeigler suffered no prejudice as a result of the "not to act" instruction.

We have dealt here with a questionable definition of "reasonable doubt", illustrating, we believe, the truism that "[a]ttempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury". *Miles v. United States,* 103 U.S. 304, 312, 26 L.Ed. 481 (1880). Most definitions given are rampant with questionable analogies and tell us what a reasonable doubt is not, rather than what it is. We believe that it is time to face up to the fact that the words themselves are their best definition, and we urge the adoption of a rule stating that the term "reasonable doubt" need not be defined even when an acceptable definition has been tendered. *United States v. Lawson,* 507 F.2d 433, 439–444 (7th Cir.1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975). Admittedly, *United States v. Offley,* 3 U.S.C.M.A. 276, 12 C.M.R. 32 (1953), would have to be overruled, but the time appears ripe for a change for the better. Surely, if the term "mental disease or defect" is self-defining, *United States v. Cortes-Crespo,* 13 M.J. 420 (C.M.A.1982), so, too, is the term "reasonable doubt", and "attempts at further definition will be confusing rather than clarifying". *Ibid.* at 422.

### V

Zeigler claims that he was prejudiced by the prosecutor's argument on the findings. He specifies three distinct areas of that argument.

■ First, he contends that the prosecutor improperly commented on Zeigler's failure to testify when he said, "I would remind you that the only evidence that has been presented to you is those documents which you have presented to you as well as the testimony of those people on the stand". While it is improper for a prosecutor to comment on the failure of a defendant to testify, paragraph 72*b*, Manual for Courts-Martial, United States, 1969 (Revised edition), we find as a matter of fact that the prosecutor's statement did not constitute a comment on Zeigler's failure to testify; rather it was a fair comment on the state of the evidence. *United States v. Hamilton,* 41 C.M.R. 970 (A.F.C.M.R.), *aff'd,* 20 U.S.C.M.A. 91, 42 C.M.R. 283 (1970).

Second, Zeigler maintains that the prosecutor repeatedly and improperly used the first person singular pronoun "I" in his argument, and improperly asserted his personal opinion as to Zeigler's motive, intent and state of mind.

■ It is true that the prosecutor made frequent use of the pronoun "I" in his argument—some twenty-one times by our count. But while it may be safer practice to avoid use of the word "I", there is absolutely

nothing wrong, *per se,* in using that word in prosecution argument. What is condemned is a statement of personal belief or opinion. "It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant". Standards for Criminal Justice, § 3–5.8(b) (1979). To illustrate, it is error for a prosecutor repeatedly to use the term "I think" in his argument, *United States v. Horn,* 9 M.J. 429 (C.M.A.1980), and to say that he has no doubt as to the guilt of the defendant. *United States v. Knickerbocker,* 2 M.J. 128 (C.M.A.1977). But we have none of that here, for not once did the prosecutor couple use of the word "I" with an expression of personal belief or opinion.

■ Finally, Zeigler points to what he regards as "prejudicially inflammatory argument". In particular he points to the following:

> Gentlemen, sitting before you is a rapist and our society demands that he be stopped. He's a violent man. The testimony shows he is a violent rapist and our society demands that he be stopped. The evidence is overwhelming and the government's position is that when you return to this court with your decision, that the evidence can only lead to the overwhelming conclusion and justice calls for a verdict of guilty. This man is guilty of these charges. This man is guilty of these charges beyond a reasonable doubt. Let there be no mistake about it, he is guilty. He is guilty and he should suffer the consequences of this sordid act of treating other human beings like they're just so much property for him to do his thing with, like they are not— they are not to be respected for their own dignity, for their own worth.

These are hard but eminently fair blows. *See generally, Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *United States v. Pendergrass,* 17 U.S.C. M.A. 391, 38 C.M.R. 189 (1968); *United States v. Doctor,* 7 U.S.C.M.A. 126, 21 C.M.R. 252 (1956).

The findings of guilty and the sentence are affirmed.

Judge McKAY and Judge LEWIS concur.