UNITED STATES, Appellant,

v.

Timothy S. ROACH, Seaman, U.S. Coast Guard, Appellee.

No. 60,717.
CGCM No. 887.

U.S. Court of Military Appeals.

Sept. 26, 1989.

For the Accused: *Lieutenant Commander James Collin* (argued).

For the United States: *Commander Richard T. Buckingham* (argued).

### Opinion of the Court

SULLIVAN, Judge:

On January 7 and 8, 1986, the accused was tried by military judge sitting alone as a general court-martial, convened by the Commander, Eighth Coast Guard District, at Tyndall Air Force Base, Florida. Pursuant to his pleas, he was found guilty of disobedience of an order of a superior officer and willfully hazarding a vessel, in violation of Articles 90 and 110, Uniform Code of Military Justice, 10 USC §§ 890 and 910, respectively. He was sentenced to a bad-conduct discharge, confinement for 30 months, total forfeitures, and reduction to the lowest enlisted grade. Pursuant to a pretrial agreement, the convening authority approved the sentence as adjudged, except for confinement exceeding 16 months. The Court of Military Review (3–2) set aside the findings of guilty for the Article 90 offense and affirmed the findings of guilty for the Article 110 offense. Reassessing the sentence, that court approved only so much of the sentence as included confinement for 16 months. 26 MJ 859 (1988) (*en banc*).

Pursuant to Article 67(b)(2), UCMJ, 10 USC § 867(b)(2), this case was certified, requesting our review of the following two questions:

### I

WHETHER THE COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW BY HOLDING THAT THE COMMANDING OFFICER'S ORDER TO THE ACCUSED, NOT TO CONSUME ALCOHOL DURING THE SHIP'S INPORT VISIT, WAS AN ILLEGAL AND UNENFORCEABLE ORDER.

### II

WHETHER, EVEN ASSUMING THAT THE CONVICTION FOR VIOLATION OF THE ORDER NOT TO DRINK WAS PROPERLY SET ASIDE, THE COURT OF MILITARY REVIEW ABUSED ITS DISCRETION BY REASSESSING THE SENTENCE WHERE ONE CAN BE HIGHLY CONFIDENT THAT THE SET ASIDE OFFENSE PLAYED NO APPRECIABLE ROLE IN THE DETERMINATION OF THE SENTENCE IN LIGHT OF THE OVERRIDING SERIOUSNESS OF HIS OTHER OFFENSE— THAT OF WILLFULLY SETTING FIRE TO A U.S. NAVAL VESSEL.

We find no error in the holding below that in this case the order not to consume alcohol was illegal. *See United States v. Noyd*, 18 USCMA 483, 489, 40 CMR 195, 201 (1969), citing *United States v. Voorhees*, 4 USCMA 509, 16 CMR 83 (1954). Moreover, we find no abuse of discretion by the court below in its reassessment of the sentence. *See generally United States v. Duke*, 5 MJ 71 (CMA 1978).

The Court of Military Review found the following facts:

Seaman Roach had been a crew member of the USCGC DEPENDABLE (WMEC 626) from October 1984. In early 1985 he was counselled on at least three occasions resulting from his returning to the ship in an intoxicated condition. A service record entry (Page 7 Administrative Remarks entry) in February 1985 advised him that his conduct to date was considered to be his first alcohol related incident, and advised Seaman Roach that a second incident would be grounds for separation under the provisions of Chapter 20 of the Coast Guard Personnel Manual. In April of 1985 he was screened by the Counseling and Assistance Center (CAAC) at the Naval Air Station Pensacola, Florida to evaluate the extent of his alcohol abuse. As a result, it was recommended that he attend mandatory Alcoholics Anonymous meetings (which, as far as can be ascertained by the record, he did not attend).

He was placed on a supervised antabuse program, and he subsequently attended Level II Substance Abuse counseling from 3 to 28 June, which reportedly resulted in improvement in his performance and attitude (page 7 Service Record entry on 17 July 1985). In August of 1985, while the DEPENDABLE was in Key West, Florida, Seaman Roach was arrested by civil authorities in connection with his consumption of alcohol, an incident which involved Roach's assault on a police officer. Another page 7, Service Record entry on 17 August advised him that his actions in Key West violated his Alcohol Abuse Aftercare Plan, were considered his second "alcohol incident", and that because he had not shown he was "making a sincere effort to overcome . . . [his] alcohol abuse problem" he was therefore being recommended for discharge.

Seaman Roach subsequently absented himself from the ship without authority from 13 September 1985 until 17 September 1985. He returned to the ship after a telephone conversation between the commanding officer and Seaman Roach's father. He accompanied the vessel on its next patrol. It was anticipated that a message authorizing his discharge would be received during the course of that patrol. On 30 September 1985, while on patrol, the commanding officer awarded Seaman Roach 30 days restriction, and 5 days extra duty for the above mentioned absence without leave. The commanding officer suspended the restriction for 3 months, and told Seaman Roach that he would be permitted to go on liberty during the forthcoming one night patrol layover in Key West, Florida, but that he was not to consume alcohol. The record

is not clear whether this order was given during the Mast Proceedings or some time thereafter. The DEPENDABLE arrived in Key West on 8 October 1985. Seaman Roach went on liberty and consumed alcohol during the afternoon and evening. He returned to the ship shortly after midnight on 9 October 1985 and set fire to the paint locker which contained numerous inflammable contents. Within minutes Seaman Roach inquired of another crew member whether the latter smelled smoke. They then proceeded to alert the persons on board and sounded the alarm. The fire was eventually extinguished with relatively minor damage (approximately $1100) having been incurred. DEPENDABLE'S resumption of patrol was slightly delayed. The message authorizing Seaman Roach's administrative discharge was received by the commanding officer later on the same day the fire was set, 9 October 1985. 26 MJ at 860–61.

I

▮▮▮ The question we must first address is whether the Court of Military Review was correct in holding the challenged order was illegal and not a proper subject for prosecution under Article 90.[1] We note that it reached such a conclusion utilizing alternative rationales. First, it held that there were no circumstances tending to show a valid military need for the order to the accused not to consume alcohol. *See United States v. Wilson*, 12 USCMA 165, 30 CMR 165 (1961). *Cf. United States v. Manos*, 17 USCMA 10, 37 CMR 274 (1967). This rationale, although dwelt upon by the dissenting opinion of Judge Cox, is not determinative in the resolution of this case.[2] Second, and decisive to this case,

---

1. Article 90–Assaulting or willfully disobeying superior commissioned officer

   Any person subject to this chapter who—
   * * * * * *
   (2) Willfully disobeys a *lawful* command of his superior commissioned officer; shall be punished, if the offense is committed in time of war, by death or such other punishment as a court-martial may direct, and if the offense is committed at any other time,

by such punishment, other than death, as a court-martial may direct.
(Emphasis added.)

2. Our Brother in dissent makes some valid and totally acceptable points on the military's mortal combat against drug and alcohol abuse. However, his dissent is focused solely on this first stated ground of the decision of the court below (the "military purpose" aspect of the or-

the Court of Military Review held that the order of the ship's commanding officer violated regulations of the Commandant of the Coast Guard under the circumstances of this case. *United States v. Austin,* 27 MJ 227, 229 (CMA 1988); *United States v. Lenox,* 21 USCMA 314, 45 CMR 88 (1972); *United States v. Stewart,* 20 USCMA 272, 276 n. 1, 43 CMR 112, 116 n. 1 (1971); *United States v. Noyd, supra.* We defer to this service court's construction of its own regulations and, accordingly, hold on this basis alone that the challenged order was illegal and unenforceable at a court-martial. *See generally* Art. 20, Coast Guard Personnel Manual (COMDTINST M1000–6) (Change 3 et seq.) (1982)

In reaching this holding, we note that the court below, which has special factfinding power, Art. 66(c), UCMJ, 10 USC § 866(c), found that the accused was an alcoholic and known to be such by his command prior to issuance of the challenged order. Moreover, it found that the accused was given liberty in this port city, the scene of his previous drunken spree, and left unsupervised in this environment. Finally, it found that a regulatory program for treatment of an alcoholic existed in the Coast Guard and that the challenged order constituted "an unjust and unreasonable mechanism to achieve the commanding officer's goals" under this program. 26 MJ at 865. The Government has proffered no substantial reason[3] for rejecting these findings of fact and law. Accordingly, the court's ultimate conclusion need not be disturbed.

## II

Next, we are asked whether the Coast Guard Court of Military Review abused its discretion in setting aside the punitive discharge. In disapproving this discharge that court acted pursuant to its power under Article 66(c). In relevant part, this Article reads:

(c) In a case referred to it, the Court of Military Review may act only with respect to the findings and sentence as approved by the convening authority. *It may affirm only* such findings of guilty and *the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.* In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

This broad grant of power by Congress to the Courts of Military Review provides little room for further review by this Court. *See generally United States v. Duke,* 5 MJ at 72–73. Moreover, setting aside one of two findings of guilty against the accused constitutes an additional basis in the record for its action. *See United States v. Sales,* 22 MJ 305 (CMA 1986). Accordingly, we cannot say the Court of Military Review's action was "an obvious miscarriage of justice." *See United States v. Olinger,* 12 MJ 458, 461 (CMA 1982).

der at bar). The holding today by the majority in this case does not hinge on whether drugs or alcohol can be controlled in the military by orders of a commander because we do believe that an appropriate military order can be used to control alcohol or drug abuse. What is at issue in this case, however, is whether an order found to be incorrect in law and fact by the Court of Military Review using its Article 66(c), UCMJ, 10 USC § 866(c), power can be upheld on appeal by this Court. The majority opinion simply holds that the court below properly exercised its Article 66 power in this case.

What has possibly misled the dissent in this case is leadership, not law. It is a failure of leadership for a commanding officer to issue an order contrary to a superior officer's published orders (the Commandant's Personnel Manual). Such an order (found to be in violation of the Commandant's Personnel Manual) can put a subordinate at an unjustified risk of disobedience and sends a message of non-uniform justice throughout the Coast Guard (especially to those personnel whose commanders follow the regulatory requirements of the Commandant). Law, not leadership, however, is the core of court-martial justice.

3. The suggestion of appellate government counsel that the Coast Guard program for alcoholics abandons relapsed alcoholics who are being processed for discharge is unsupported.

Government counsel also relies on this Court's opinion in *United States v. Burris*, 21 MJ 140 (CMA 1985), for the proposition that "Courts of Military Review should not be found in the position of reinterpreting facts and substituting their judgment for that of the trial court." Such reliance is misplaced. *Burris* involved an Article 62, UCMJ, 10 USC § 862, appeal, in which the Court of Military Review was called upon to review "matters of law" only. *Id.* at 143. Roach's case was reviewed under Article 66, which, as the quoted passage above states, permits the Coast Guard Court of Military Review to approve only such sentence as the evidence of record permits.

■ Finally, appellate government counsel impliedly urges this Court to consider the amount of back pay and allowances the accused will receive as a result of the Court of Military Review's sentence action. He directly asserts that the court below should have considered this factor in its sentence reassessment. First, we note that this is a court of law and introduction of

such a consideration for the first time before us is most inappropriate. Art. 67(d). Secondly, with respect to the Court of Military Review, we note that the Government's affidavit was not submitted to that court and, accordingly, it is a matter outside the record of trial and its allied papers. *Cf. United States v. Healy*, 26 MJ 394 (CMA 1988). Accordingly, this argument has not influenced our legal judgment in this appeal.

We answer both certified questions in the negative.

The decision of the United States Coast Guard Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

COX, Judge (dissenting):

I respectfully dissent.[1]

Each situation in which a commissioned officer issues a direct order has a time and place of its own. While it is true that some orders "not to consume alcohol" may be overly broad and without a significant mili-

1. The majority is critical of my view regarding the legality of this order not to consume alcohol:

This rationale [referring to the holding below about the order], although dwelt upon by the dissenting opinion of Judge Cox, is not determinative in the resolution of this case. Second, and *decisive* to this case, the Court of Military Review held that the order of the ship's commanding officer violated regulations of the Commandant of the Coast Guard under the circumstances of this case.

29 MJ 33, 35 (emphasis added). My response to this criticism is simple. First, the majority has not disagreed with the Court of Military Review that "most [persons] would still consider that an order 'not to consume "alcohol"'" interferes with private rights or personal affairs." 26 MJ 859, 865 (1988). That is not *dicta;* it is the holding in the case! What has the majority said about such orders? What is the answer? I say the order was legal under the circumstances of this case: Presumed to be legal, admitted to be legal, and *indeed* it was legal.

Second, to the extent the Court of Military Review found the regulation "decisive," then the plain facts of the case have been ignored by both the Court of Military Review and the majority herein.
a. Accused had rejected efforts to rehabilitate him.

b. He refused to participate in Alcoholics Anonymous.
c. He failed the Level II Substance Abuse Program.
d. He was being considered for an administrative discharge; and
e. *He was beyond the aftercare program.*
There is not one witness, not one fact, which supports a *decisive* finding by this Court or by the Court of Military Review that the Commandant's regulation was violated by the commanding officer of the USCGC DEPENDABLE. It is grossly unfair to suggest that this commanding officer had any motive for allowing the accused to go on liberty other than an attempt to be kind and compassionate to a young "Coasty" during the Christmas Season and permitting him a short shore leave in Key West, Florida, from a vessel which was performing drug-enforcement duty at the time.
Fundamental notions of fairness require that, at the very least, the Government should be given the opportunity to litigate the question which has been denied because the accused pleaded guilty. He never blamed his commander for poor leadership or disobedience of the Commandant's regulations. This is an appellate invention for which the majority has fallen— hook, line, and sinker.

tary purpose, *see United States v. Wilson,* 12 USCMA 165, 30 CMR 165 (1961), that is not so in this case.

The record of trial paints a sad picture of this accused. At the young age of 19—when the offense took place—he had been involved in several serious episodes of alcohol abuse. These included an incident in Key West, Florida (the scene of the incident in this appeal), where the accused assaulted a police officer. Treatment for his alcohol problems included Alcoholics Anonymous, in which he refused to participate, and a Level II Substance Abuse Program, which included treatment with Antabuse.[2] He was being processed for discharge from the Coast Guard because of his misconduct and alcohol abuse when the incident which is before us now occurred.

In September of 1985, the accused went absent without leave. His commanding officer called his home and persuaded him to return to his ship, the USCGC (Coast Guard Cutter) DEPENDABLE. On September 30, the commanding officer punished him by awarding 30 days' restriction and 5 days' extra duty. The restriction was suspended and the commander advised the accused that he would be allowed to go on liberty when the ship called on Key West for a 1–night layover on the condition that he would not consume alcohol.

In spite of this admonition, the accused went into a bar while on liberty and began drinking alcoholic beverages. A shipmate urged him to cease, but he refused. He later returned to the ship where, in order to "get even with the ship," he started a fire in the paint locker.

When the court-martial began, as part of a negotiated plea, the accused freely and voluntarily pleaded guilty to willfully hazarding a vessel, and willfully disobeying the lawful order of his commanding officer, in violation of Articles 110 and 90, Uniform Code of Military Justice, 10 USC §§ 910

and 890, respectively. Regarding the latter charge, the accused stated:

> I believe he gave me an order to help me out because he wanted to see me get over my alcohol problem. *He also did it for the safety of the ship.* I'm a member, I'm a qualified watch-stander, I'm a helmsman, a lookout, a qualified messenger, *so to have someone drinking about the Coast Guard Cutter DEPENDABLE would put the ship in jeopardy.*

(Emphasis added.)

The accused's own testimony establishes the nexus of the order to military duty. I do not believe that any judge could phrase a military purpose for an order more eloquently or succinctly. *See* para. 14c(2)(a)(iii), Part IV, Manual for Courts-Martial, United States, 1984.

Notwithstanding the accused's own admission about the importance of the order to the morale, discipline, health, and welfare of his shipmates and the USCGC DEPENDABLE, as well as its materiality to his own safety, health, and welfare, the Court of Military Review found the order to be unlawful, stating:

> Even in this era of heightened awareness of society's need to address alcoholism and the abuse of alcohol, most would still consider that an order "not to consume 'alcohol'" interferes with private rights or personal affairs.

26 MJ 859, 865 (1988).

I suspect that the real reason for that court's reversal of this conviction can be found in the closing portion of the paragraph in the opinion that deals with the illegality of the order:

> It should have been no surprise that Roach drank on this occasion—indeed, it was probably clearly foreseeable. We conclude that the use of a direct order not to drink alcohol is an unjust and unreasonable mechanism to achieve the commanding officer's goals in circum-

---

2. Antabuse is defined as:
   The trademark name for a preparation of disulfiram or tetraethylthiuram disulfide, a substance used to discourage alcohol addicts from drinking. A patient who takes Antabuse

suffers physical discomfort on drinking even small amounts of alcohol.
1 J. Schmidt, *Attorneys' Dictionary of Medicine and Word Finder* A–240 (Rel.18–4/85).

stances such as these where patently legal and decidedly more effective methods were available to the commanding officer and were specifically rejected (*e.g.*, those provided for in the Personnel Manual, and the simple remedy of not suspending the restriction in Key West, thus making good on his promise that while on patrol, liquor would not be available).

*Id.* at 865–66.

*United States v. Wilson, supra,* represents a libertarian view of military life that I do not accept. While I agree that use and consumption of alcohol, even in vast quantities, has been an aspect of military life that generally has been condoned in previous years, current military policy recognizes that alcohol and drug abuse are serious problems and greatly impair the readiness of our national defense. From a jurisprudential viewpoint, I see no fundamental difference in regulating use of illegal drugs, which "will enter the military installation in their most lethal form—namely, when they are coursing through the body of the user" (*United States v. Trottier,* 9 MJ 337, 349 (CMA 1980)), and the regulation of alcohol abuse, especially prohibited alcohol abuse. We certainly recognize the regulation of alcohol abuse in other forms, *i.e.*, drunken driving, drunk on duty, and drunkeness aboard a ship. *See* Arts. 111, 112, and 134, UCMJ, 10 USC §§ 911, 912, and 934, respectively.

In any event, the order in *Wilson* was to prevent and protect the accused from again becoming involved in misconduct while under the influence of alcohol. 12 USCMA at 166, 30 CMR at 166. The purpose of the instant order was to protect the USCGC DEPENDABLE and its crew, which was, at the time, involved in law-enforcement patrols of the waters off the coast of southern Florida, purportedly a major entry point for drug smuggling. This case is further distinguished from *Wilson* because of its limited application. The accused was given a specific order not to drink on this short liberty, unlike Airman Wilson, who was given an order that "was to apply in all places and on all occasions." *Id.* at 166, 30 CMR at 166.

Again from a jurisprudential viewpoint, the impact on military morale, discipline, health, and welfare of alcohol abuse is likely to be as severe as is the use and abuse of marijuana, cocaine, and some of the other currently popular drugs. For example, it seems as though a significant number of the child-abuse cases we review emanate or evolve from or involve alcohol abuse by an accused. Likewise, consumption of alcohol is usually a factor in other crimes of violence, such as assault, rape, and homicide. Of course, there is no way to measure the loss in terms of efficient man-hours.

Chief Judge Everett, writing for this Court in *United States v. Trottier, supra,* observed:

As military equipment has become more sophisticated, there is the concomitant increased risk that an operator will be unable to handle the complicated weapons system with which he is entrusted and upon which his safety and that of others may depend. This risk, disturbingly, often cannot be obviated by keeping a person under the influence of a drug off the job for, *unlike use of alcohol,* there frequently are only marginally visible indications of the influence of drugs. Even when the user is not then under the influence, there may be dangerous psychological pressures on him which, themselves, could affect his performance adversely. Moreover, all this may be said of the serviceperson performing what may be perceived as the most routine and mundane duty, for *there is no individual in our modern armed forces whose performance may not touch others in a significant way.*

Without the maintenance of a credible armed force, the United States is at a serious military and geopolitical disadvantage. The need is overwhelming to be prepared to field at a moment's notice a fighting force of finely tuned, physically and mentally fit men and women—and satisfaction of that need is not compatible with indiscriminate use of debilita-

ting drugs. There are, in short, abundant and persuasive grounds for giving weight to the representations made to the Congress by the country's military leaders that drug abuse by servicepersons is rampant and that the armed services must curtail such abuse through exercise of court-martial jurisdiction to the greatest extent legally permissible. *See* Reinstitution of Procedures for Registration Under the Military Selective Service Act: Hearing on S.266 before the Subcommittee on Manpower and Personnel, Senate Armed Services Committee, 96th Cong., 1st Sess. (March 13, 1979) (Statements of General Lew Allen, Jr., Admiral T.B. Hayward, and General Bernard W. Rogers).

9 MJ at 345–46 (emphasis added; footnotes omitted).

The USCGC DEPENDABLE is part of the fighting force that confronts a "war" everyday when it is involved in drug-interdiction patrols. I find that this order is more akin to regulations which prohibit aircrew members from engaging in their duties for a specified period after consuming alcohol, a candid recognition that alcohol lingers in the drinker's blood for a considerable period of time after it is ingested. *United States v. Green*, 22 MJ 711, 717–18 n.8 (ACMR 1986). Alcohol can, therefore, be as dangerous as marijuana and other drugs which linger in the blood stream. *See also* Chief Judge Everett's opinion in *Murray v. Haldeman*, 16 MJ 74 (CMA 1983).

The accused cannot hide behind the legality of his conduct in Key West, Florida, as a justification for disobeying an order. On the date of the offense, October 8, 1985, Florida law prohibited all persons under the age of 21 years from consuming alcoholic beverages. § 562.11(1)(a), Florida

Statutes (1985). Having been born on August 30, 1966, accused was 19 years old during the time in question. The law specifies that it applies to all persons born after June 30, 1966. Thus, *the law applied to him*. It is ironic that his illegal conduct is required by judicial authorities to be sanctioned by the service to which he belongs.

I agree that punishment cannot be enhanced by making prohibited conduct more onerous when a member is given a direct and personal order to obey the law. *United States v. Bratcher*, 18 USCMA 125, 128, 39 CMR ·125, 128 (1969). The law is the law! But if society as a whole can regulate the drinking habits of 19–year–old persons and, indeed, a whole nation—if one accepts a Constitutional amendment as law, as we do—I find nothing illegal in having a ship's commander take action to regulate drinking of alcohol by members of his crew, especially those who are known to have created problems when under the influence and who, when they return to the ship, will embark upon drug law-enforcement patrols. Even the majority might agree that this commanding officer could have denied the accused the opportunity to go on liberty in Key West. If so, what is so objectionable about that same officer setting terms and conditions, or standards of conduct, to be met during that period of liberty? Article 20–A–1a, COMDTINST M1000.6, states that "[d]rug and alcohol abuse undermine and jeopardize morale, mission performance, and safety and will not be tolerated in the Coast Guard." In my view, herein lies the basis for the requisite "[r]elationship to military duty." Para. 14c(2)(a)(iii), Manual, *supra*.

I would reverse the decision of the United States Coast Guard Court of Military Review as to Charge I and uphold accused's conviction.