**UNITED STATES**

v.

**First Lieutenant Gerard A. FLYNN, 354–66–6488, United States Air Force.**

**ACM 28531.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 11 Jan. 1990.

Decided 4 June 1992.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair, Lieutenant Colonel Michael Sofocleous, and Major Bernard E. Doyle, Jr.

Appellate Counsel for the United States: Colonel Robert E. Giovagnoni, Lieutenant Colonel Brenda J. Hollis, Major Paul H. Blackwell, Jr., and Captain David G. Nix.

Before DIXON, PRATT, and McLAUTHLIN, Appellate Military Judges.

## OPINION OF THE COURT

McLAUTHLIN, Judge:

After mixed pleas, First Lieutenant Gerard A. Flynn was found guilty of sodomy, making a false sworn statement, soliciting another to obstruct justice, disobeying his commander's order, two derelictions of duty, and three counts of conduct unbecoming an officer. A panel of officers sentenced him to a dismissal, confinement for 3 years, and forfeiture of all pay and allowances. The convening authority approved the sentence as adjudged. Appellant raises several issues on appeal, some warranting discussion, but none warranting relief.

## MOTION TO SUPPRESS

In one assigned error, the appellant argues that the military judge incorrectly admitted evidence obtained by investigators after counsel had been requested. The hearing on the suppression motion revealed that the appellant was first interviewed by security police investigators on 1 August 1989. They informed him he was suspected of fraternization, conduct unbecoming an officer and a gentleman, and dereliction of duty, and advised him of his Article 31(b), UCMJ,[1] and counsel rights. The appellant asked for a lawyer and declined to make a statement. The interview was terminated and no further questioning took place.

That night, the appellant went to his commander and said he wanted to talk about the investigation. The commander refused to discuss the matter, having been informed of the appellant's earlier request for an attorney and decision not to answer questions.

The next day, the appellant approached his commander again and repeated his request to discuss the case. The commander initially refused, restating his position from the night before: they could not talk since the appellant had requested an attorney. However, the commander finally acquiesced after the appellant persisted. The commander began by re-advising the appellant of his Article 31 and counsel rights, including the fact that he could stop the questioning at any time. The appellant acknowledged understanding his rights. Although he indicated he probably would contact a lawyer at some later point, he said he did not want an attorney at that time and made a verbal statement to his commander.

The appellant visited the office of the local area defense counsel on 7 August 1989. There, he met with Captain Jacobson who advised him that he could not be the appellant's attorney because of a potential conflict. Captain Jacobson was prepared to contact another defense attorney for the appellant, but the appellant said he had only general questions about his Arti-

---

1. 10 U.S.C. § 831(b).

cle 31(b) rights. Captain Jacobson answered those questions and the appellant departed. The trial judge concluded that the appellant did not ask Captain Jacobson to get him an attorney and only wanted answers to his "general questions."

On 28 August 1989, a security police investigator casually encountered the appellant, who was also a security policeman, in a hallway of their building. The investigator knew about appellant's 1 August 1989 request for counsel, but was unaware of the appellant's 2 August 1989 meeting with the commander. Apparently in order to schedule a follow-up interview with the appellant and his attorney, the investigator asked if the appellant had obtained an attorney. The appellant said he had not. The investigator then asked the appellant whether he was going to do so. When the appellant said he was not, the investigator asked if the appellant wanted to talk. The appellant said he did. Then, the appellant was taken to an interview room and read his rights. He acknowledged his understanding of those rights, declined counsel, agreed to talk, and wrote a 28–page statement.

The appellant also made statements, again after rights advisements, on 30 August, 8 September, and 10 September 1989. On each of these occasions, the judge found that the appellant "understood both his right to obtain counsel and consult with counsel as well as his right to answer questions without an attorney present." The judge concluded that all of the appellant's statements were made "voluntarily and without any coercion or undue influence on the part of any investigating personnel," and denied the appellant's motion. Appellant contends on appeal that the judge's ruling was incorrect. We disagree.

The Supreme Court's recent decision in *Minnick v. Mississippi*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), was unavailable to the trial participants and to appellate counsel at the time appellate briefs were filed. The Court of Military Appeals has suggested that *Minnick* may require the *actual presence* of an attorney

at *any* subsequent interview, once an accused has requested counsel. *See United States v. Hinojosa*, 33 M.J. 353 at 355 (C.M.A.1991). However, we do not read *Minnick*, its predecessors, or its progeny as barring any of the appellant's statements in this case, despite the fact that they were all made without an attorney present after he had requested counsel.

The accused initiated the contacts with his commander before making his first statement. In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court held that "an accused ..., having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police.*" *Id.* at 484–85, 101 S.Ct. at 1885 (emphasis added). Two years later, in *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), the Court announced a two-part test to determine the admissibility of a confession offered after a suspect has invoked the right to counsel. The Court held that the confession is admissible if: (1) the suspect initiates the discussion that leads to it and (2) the totality of the circumstances reveals that the purported waiver is both voluntary and intelligent. *Id.* at 1044–46, 103 S.Ct. at 2834–35.

In *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), the Supreme Court held that, after a request for counsel "it is presumed that any subsequent waiver *that has come at the authorities' behest, and not at the suspect's own instigation,* is itself the product of the 'inherently compelling pressures' and not the purely voluntary choice of the suspect." *Id.* at 681, 108 S.Ct. at 2097–98 (emphasis added). The Court of Military Appeals noted in *United States v. Fassler*, 29 M.J. 193, 196 (C.M.A.1989), that "*Roberson* is an offspring of *Miranda*[2]; and its prophylactic rules are equally applicable to trials by court-martial. Therefore, regardless of

---

**2.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.     1602, 16 L.Ed.2d 694 (1966).

Mil.R.Evid. 305(e), a suspect who requests counsel during custodial interrogation may not thereafter be interviewed *at the initiative of authorities* about any offense." (emphasis added).

In *Minnick,* Justice Kennedy stated for the Court's majority that, once an accused requests counsel:

> a fair reading of *Edwards* and subsequent cases demonstrates that we have interpreted the rule to bar *police-initiated* interrogation unless the accused has counsel with him at the time of questioning. Whatever the ambiguities of our earlier cases on this point, we now hold that when counsel is requested, interrogation must cease, and officials may not *reinitiate* interrogation without counsel present, whether or not the accused has consulted with his attorney.

111 S.Ct. at 491 (emphasis added). In fact, the *Minnick* Court made it clear that *"Edwards* does not foreclose finding a waiver of Fifth Amendment protections after counsel has been requested, provided *the accused* has initiated the conversation or discussions with the authorities; but that is not the case before us." 111 S.Ct. at 492 (emphasis added).

What was not before the Supreme Court in *Minnick* is before us here, at least in evaluating the appellant's statement to his commander on 2 August 1989. Although he requested counsel on 1 August 1989, we find the appellant waived his constitutional and codal protections by initiating discussions with his commander the next day, and by executing a knowing, express waiver of his rights.

█ The first of the appellant's subsequent statements to security police investigators was arguably "police-initiated," taken with no knowledge of the appellant's voluntary statement to the commander. Nevertheless, we find that the trial judge properly denied the motion to suppress these statements as well. They came after weeks passed in which the appellant was completely free to acquire counsel for the pending charges. On 28 August, he told the investigator (who was attempting to schedule an interview with the appellant's

attorney present) that he had decided not to get counsel and that he would answer questions. Then, after again expressly waiving his rights, he provided a written statement. Each succeeding statement followed identical rights waivers. We conclude that all of these factors, in particular the absence of custody between the appellant's original request for counsel and his later statements, are sufficient to remove those statements from the proscription of *Edwards* or *Minnick.*

In *Miranda,* the Supreme Court held that once an individual *in custody* invokes his right to counsel, interrogation "must cease until an attorney is present." 384 U.S. at 474, 86 S.Ct. at 1628. *Edwards* dealt with authorities reinterrogating an accused held *in continuous custody* after he had asserted his right to counsel. There, the Court said, "when an accused has invoked his right to have counsel present during *custodial interrogation,* a valid waiver of that right cannot be established by showing only that he responded to *further police initiated custodial interrogation* even if he has been advised of his rights." 451 U.S. at 484, 101 S.Ct. at 1884 (emphasis added). *Minnick* also involved subsequent police-initiated questioning of a suspect still held in custody after his request for counsel.

In the Supreme Court's latest discussion of this question, *McNeil v. Wisconsin,* 500 U.S. ——, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), Justice Scalia summarized the meaning of *Miranda, Edwards,* and *Minnick* after a suspect has requested counsel: "If the police do subsequently initiate an encounter in the absence of counsel (*assuming there has been no break in custody*), the suspect's statements are presumed involuntary and therefore inadmissible...." (emphasis added) 500 U.S. at ——, 111 S.Ct. at 2208, 115 L.Ed.2d at 167–168. According to Justice Scalia, "This is 'designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights,' *Michigan v. Harvey,* 494 U.S. 344, 350, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293 (1990)." 115 L.Ed.2d at 168. Justice Scalia's analysis is consistent with

the Court of Military Appeals' conclusion in a pre-*Minnick* decision that the passage of six noncustodial days between an unwarned request for counsel and a confession after proper rights advice and waiver was enough to permit the confession's admission. *United States v. Schake,* 30 M.J. 314 (C.M.A.1990).

The appellant's conversations with investigators beginning on 28 August 1989 may have been "police-initiated," but these occurred nearly 4 weeks after his first interview ended with his request for counsel. None of that period was spent in custody. During that time, the appellant independently sought out his commander and made a statement after waiving his Article 31(b) rights and his right to counsel. He also met with a conflicted area defense counsel and declined the opportunity to be assigned another defense counsel. He told the investigator on 28 August 1989 that he had decided not to get an attorney. Each statement he provided from that day on came after receiving a proper rights advisement and waiving his rights. Absent here is any sign of the custodial "police badgering" *Miranda, Edwards,* and *Minnick* were fashioned to deter. Therefore, we find each of the appellant's statements was made voluntarily, after a knowing and intelligent waiver of his constitutional and codal rights. The trial judge's denial of the appellant's motion to suppress was proper in view of both then-existing *and* ensuing case law.

### VALIDITY OF THE COMMANDER'S ORDERS

■ The appellant invites our attention to the argument he made at trial that the commander's orders undergirding two specifications of Charge IV were invalid. One was an order to cease all contact with the female airman involved in his suspected fraternization. Trial defense counsel argued that this was an unreasonable constraint. Since both worked in the security police squadron and the appellant was one of just a few officers in the unit, the trial defense counsel contended that, at some point, the two would "have to have some sort of contact."

■ The second order the defense attacked was the commander's policy requiring squadron members to remain within a 400 mile radius of the base or be on a pass or leave. The defense argued that the 400–mile limit was "arbitrary" with "no logical purpose," and that it unreasonably restricted "private rights and personal affairs."

The trial judge upheld both orders. He found that the order not to contact the female airman preserved morale, good order and discipline within the unit since "it was apparent that rumors of impropriety were already circulating in the organization." The judge also found that this order preserved "good order and discipline by denying two potential suspects an opportunity to compare versions of the same events, when it was possible, if not probable that each would be questioned about those events."

The trial judge found that the second order maintained good order and discipline "by insuring a reasonable accountability for duty purposes while still allowing reasonably free pursuit by individual unit members of their own private interests." This order also provided for "legitimate emergency contact allowing an individual to return to the base if such an urgent emergency were to arise."

■ In *United States v. Wine,* 28 M.J. 688 (A.F.C.M.R.1989), we set forth a three-part test to appraise the lawfulness of orders. The order must be: (1) reasonably in furtherance of or connected to military needs; (2) specific as to time and place and definite and certain in describing the thing or act to be done or omitted; and (3) not otherwise contrary to established law or regulation. 28 M.J. at 691. *See also United States v. Spencer* (McGilvrey, Real Party in Interest), 29 M.J. 740, 743 (A.F.C.M.R. 1989). Moreover, an order may not, without a valid military purpose, interfere with private rights or personal affairs. MCM, Part IV, paragraph 14c(2)(a)(iii). An order too broadly restrictive of a private right of an individual may be arbitrary and illegal. *United States v. Wilson,* 12 U.S.C.M.A. 165, 30 C.M.R. 165 (1961).

Applying the law to the orders in question, we come to the same conclusions as the military judge. Each order had a valid military purpose in furtherance of military needs without unreasonably infringing upon personal freedoms. Therefore, we find the trial judge correctly denied the motions to dismiss the two specifications of Charge IV.

## ARTICLE 133 "FRATERNIZATION"

■ The appellant also questions whether his guilty plea to specification 1 of Charge I was provident. As a violation of Article 133, UCMJ, that specification alleges:

> that First Lieutenant Gerard A. Flynn, United States Air Force, ... did ... on divers occasions between on or about 1 May 1989 and on or about 8 September 1989, wrongfully, dishonorably, and disgracefully have sexual intercourse with Airman [E], an active duty enlisted member of the United States Air Force under his command, contrary to the customs and traditions of the Armed Forces of the United States.

The specification alleges that Airman E was under the appellant's "command." During the providence inquiry and in his guilty plea stipulation, the appellant admitted that Airman E was his subordinate and under his supervision. This is sufficient. "A commander or supervisor who fraternizes sexually with someone under his command or supervision clearly violates a longstanding custom of the Air Force." *See United States v. Parrillo,* 31 M.J. 886, 891 (A.F.C.M.R.1990), *aff'd,* 34 M.J. 112 (C.M.A.1992). Thus, we find that the specification in question adequately alleges an offense, and that the appellant's plea of guilty to that specification is provident.

## TRIAL COUNSEL'S SENTENCING ARGUMENT

■ During his sentencing rebuttal argument, trial counsel said,

> I'm not entitled to a personal opinion as to what should happen to the accused.... I stand before you as the representative of the United States Government and I speak for the United States Government. He speaks for Lieutenant Flynn. The defense counsel does not seem to understand what I thought had been said on behalf of my client very clearly.... [T]he United States Government really wants this person to go to jail, for a minimum of forty-four months and fourteen days.

Trial defense counsel voiced no objection to the trial counsel's argument. In his rebuttal argument, the defense counsel informed the members that the military judge would instruct them,

> that trial counsel's comments do not represent those necessarily of anyone in position of power or in the Air Force or government and of anyone other than the trial counsel's similar to defense counsel. If there is any dispute about that, please listen to what the judge says.

Before instructions, trial defense counsel asked the military judge to instruct the members that "... the prosecutor is not allowed to provide a specific personal opinion as to sentencing." In his sentencing instructions, the military judge told the members:

> Now the court is advised that the arguments of the trial counsel represent only the prosecution's suggestions as to what might be an appropriate sentence and they do not necessarily reflect the opinion of the United States Air Force or anyone occupying an official position with respect to these proceedings. The court is also advised that it is inappropriate for a lawyer, for either side, to express a personal opinion.

After the judge's sentencing instructions, trial defense counsel asked for an Article 39(a), UCMJ, session in which he requested an additional instruction to "curtail the possibility of any effective command influence on these court members if they feel that somebody within an official position is telling them what the punishment should be." The military judge denied the request.

Here again, the appellant contends that the judge's instructions were insufficient to quiet the inflammatory nature of the trial counsel's sentencing argument. We do not

agree. "Trial counsel may not in argument purport to speak for the convening authority or any higher authority." R.C.M. 1001(g). Any hint that the trial counsel had done so was adequately dispelled by the military judge's instructions.

### POST-TRIAL CLEMENCY MATTERS

■ The appellant acknowledged receiving a copy of the staff judge advocate's recommendations in his case on 16 March 1990. The same day, his defense counsel requested a 20-day extension of time to submit clemency matters. On 3 April 1990, the convening authority's assistant staff judge advocate informed the appellant that the request for additional time was granted, making the appellant's "submissions now due on 11 April 1990." [3]

Appellant's clemency package is dated 10 April 1990. An illegible copy of this package was apparently datafaxed to the convening authority on 11 April 1990. A legible copy of the same package was retransmitted by datafax on 12 April 1990. That package contained two letters from the defense counsel, one letter from the appellant, and seven other letters. The addendum to the staff judge advocate's recommendation, dated 20 April 1990, attached the legible datafaxed copy of the appellant's clemency submissions. The convening authority's action is dated 24 April 1990.

On 26 April 1990, the convening authority's staff judge advocate forwarded the record for appellate review. Sometime after 26 April 1990, the convening authority's staff judge advocate received the original clemency package by mail from trial defense counsel. That package contained two letters not included in the earlier datafaxed materials.

The appellant received his copy of the record of trial on 12 April 1990. Thus, he actually had until 22 April 1990 to submit his clemency matters, since he had "10 days from service of the record of trial under R.C.M. 1104(b) or receipt of the

[staff judge advocate's] recommendation, *whichever is later,* in which to submit comments on the recommendation." (emphasis added) R.C.M. 1106(f)(5).

We are unable to find that the appellant suffered any material prejudice despite the obvious procedural irregularities in the post-trial processing of his record. He and his counsel submitted matters to the convening authority on the date set by the assistant staff judge advocate with no indication that more time was necessary or that more letters would be forthcoming. The two additional letters attached to the mailed package arrived more than 2 weeks after the agreed-upon "extension" date, and as much as 1 week after the actual date the appellant should have been given to respond under R.C.M. 1106(f)(5). Thus, in every respect, the additional letters were untimely. Our review of all the circumstances convinces us that the action of the convening authority was not premature.

### SENTENCE APPROPRIATENESS

■ The appellant also contends that his sentence is inappropriately severe. He faced a maximum punishment of a dismissal, confinement for 15 years, total forfeitures and an unlimited fine. He was convicted of engaging in conduct unbecoming an officer by carrying on a prolonged sexual relationship with an airman under his supervision. One of these sexual encounters took place while the appellant was on duty and performing a walk-through inspection of the airman's dormitory. The appellant was also convicted of two other counts of conduct unbecoming an officer, making a false sworn statement, soliciting another to obstruct justice, disobeying the order of his commander, two derelictions of duty, and sodomy. Under these circumstances, we find the approved sentence entirely appropriate.

The remaining matters raised in the appellant's assignment of errors are resolved

---

**3.** This date appears to have been calculated incorrectly if 16 March 1990 is used as a starting point. A 20-day extension to the normal 10- day response time allowed under R.C.M. 1106(f)(5) would have made appellant's matters due on 15 April 1990, not 11 April 1990.

against him.[4]  Therefore, having examined the record of trial, the assignment of errors, and the government's reply thereto, we conclude that the findings and sentence are correct in law and fact, the sentence is appropriate, and no error prejudicial to the substantial rights of the accused was committed.  Accordingly, the findings of guilty and sentence are

AFFIRMED.

Chief Judge DIXON and Senior Judge PRATT concur.

4. Appellate defense counsel correctly point out that the time periods listed in specifications 2 and 3 of Charge I on General Court–Martial Order 93 do not correspond with the court's findings.  We find no prejudice, but direct that the Order be corrected.