**UNITED STATES**

v.

**Todd C. PADGETT, Seaman Apprentice,
U.S. Coast Guard.**

**CGCMG 0107.
Docket No. 1060.**

U.S. Coast Guard Court of
Criminal Appeals.

19 Dec. 1996.

Trial Counsel: LCDR Samuel R. Watkins, USCG.

Defense Counsel: LT Patrick E. Kelly, JAGC, USNR.

Appellate Defense Counsel: LT Richard R. Beyer, USCGR.

Appellate Government Counsel: LCDR Brian Binney, USCG.

Before PANEL SIX, BAUM, O'HARA and KANTOR, Appellate Military Judges.

KANTOR, Judge:

Appellant was tried by a general court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, he was convicted of the following offenses: one specification of willfully disobeying his superior commissioned officer, in violation of Article 90, UCMJ (Charge I); one specification of failing to obey a lawful order, in violation of Article 92, UCMJ (Charge II); and one specification of committing an indecent act with a child, in violation of Article 134, UCMJ (Charge IV), 10 U.S.C. §§ 890, 892, 934.[1] The military judge sentenced appellant to be discharged from the U.S. Coast Guard with a bad conduct discharge, to be confined for two years, to forfeit all pay and allowances, and to be reduced to pay grade E–1. In compliance with the pretrial agreement, the convening authority only approved so much of the sentence as provided for a bad conduct discharge, reduction to pay grade E–1, and confinement for twelve months.

Appellant's plea bargain permitted a conditional plea to Charge I and the sole specification thereunder to preserve the right to challenge, on appeal, the lawfulness of the order given him by his superior commissioned officer. Having thus preserved his right to appeal the denial of his motion to dismiss Charge I, appellant now renews his argument that the order was unlawful because it impermissibly interfered with his private rights and personal affairs, that it was overbroad, had no time limit, and was given essentially to achieve a private, non-military end. As his second assigned error, appellant claims that the action of the convening authority must be set aside because of a failure to comply with the requirement of Article 54(d), UCMJ, 10 U.S.C. § 854(d), and Rule for Courts–Martial 1104(b) [hereinafter R.C.M.] that a copy of the authenticated record of trial be served on the accused. Finally, appellant alleges that this Court lacks jurisdiction to affirm his case because of the service of a civilian judge who has not been appointed in accordance with the Appointments Clause of the U.S. Constitution (U.S. Const. Art. II, § 2, cl. 2).

## I

Appellant contends that the military judge erred by denying the defense motion to dismiss Charge I and its sole specification for failure to state an offense because the order appellant was accused of violating was not a lawful order. The relevant facts are as follows: Appellant, age 25, was assigned to the USCGC WHITE LUPINE homeported in Rockland, Maine. In the fall of 1994, he became romantically involved with a 14–year old Rockland female [LB] who falsely represented herself to appellant as being 17 years of age. Approximately three weeks after the relationship began, [LB's] mother became aware of the relationship and wanted it terminated. She promptly went to the WHITE LUPINE and spoke with the duty officer about her concerns. The duty officer, in turn, reported this conversation to the commanding officer, CWO Dilger, who was unaware of the existence of the relationship. Shortly thereafter, CWO Dilger spoke to appellant, told him that [LB] was under sixteen years of age, and ordered him "not to see [LB], not to talk to her, not to call her, not to have any type of relationship with her, not to be friends with her." There was no indication as to how long this order was to remain in effect.

Appellant complied with the order until the early morning hours of 14 January 1995. The night before, [LB] and a 13 year old female companion, [JC], called the CGC WHITE LUPINE asking for appellant. Although told that he was not onboard, the two girls subsequently visited the WHITE LUPINE and stayed onboard well into the early morning hours of 14 January 1995 visiting with other crewmembers. At approximately 0300 that morning, the appellant arrived back onboard the WHITE LUPINE. Although initially unaware of their presence, once seeing them, he engaged in some conversation with both girls. Shortly thereafter, all three left the WHITE LUPINE in the appellant's vehicle and drove to the Coast Guard Station in Rockland. The appellant stationed both girls at the back door of the

1. Charge III was withdrawn by the Convening Authority prior to trial.

station house while he entered from the front, passing the duty watchstander. Once past the duty watchstander, appellant went to the back door and let both girls in the station house. All three proceeded to his room where he engaged in intimate sexual contact with both girls, including the conduct which formed the basis for Charge IV.

■ It is well settled in military law that a superior officer's order is presumed to be lawful. *Unger v. Ziemniak,* 27 M.J. 349, 359 (C.M.A.1989), *citing United States v. Austin,* 27 M.J. 227, 231–32 (C.M.A.1988). In addition, such an order "is disobeyed at the peril of the subordinate." Para. 14c(2)(a)(i), Part IV, Manual for Courts–Martial, United States (1995 ed.) (hereinafter referred to as MCM 1995). Nevertheless, for a superior officer's order to be enforceable under Article 90, UCMJ, there must be a sufficient nexus between the order and a military duty. As further stated in MCM 1995:

> The order must relate to military duty which includes all activities reasonably necessary to accomplish a military mission, or safeguard or promote the morale, discipline, and usefulness of members of a command and directly connected with the maintenance of good order in the service. The order may not, without such a valid military purpose, interfere with private rights or personal affairs.... Disobedience of an order which has for its sole object the attainment of some private end, or which is given for the sole purpose of increasing the penalty for an offense which it is expected the accused may commit, is not punishable under the article.

*Id.,* para. 14c(2)(a)(iii); *United States v. Martin,* 5 C.M.R. 102, 104 (C.M.A.1952). We must now decide whether or not CWO Dilger's order related to a military duty, keeping in mind that "[o]rders and directives which only tangentially further a military objective, are excessively broad in scope, are arbitrary and capricious, or needlessly abridge a personal right are subject to close scrutiny and may be invalid and unenforceable." *United States v. Green,* 22 M.J. 711, 716 (A.C.M.R.1986), *cited in United States v. Womack,* 27 M.J. 630, 633 (A.F.C.M.R.1988), *aff'd.* 29 M.J. 88 (C.M.A.1989).

■ Appellant initially raises a constitutional issue based upon freedom of association. Relying on *Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), appellant claims that the order by CWO Dilger, his commanding officer, clearly interfered with his private rights and personal affairs and can only withstand judicial scrutiny for "very important" reasons. (Appellant's Brief at 5–6). In *Roberts,* the Supreme Court pointed out that there are two dimensions to freedom of association: the freedom to enter into and maintain certain intimate human relationships where the State could not unduly intrude; and the freedom of expressive association, implicating the Constitutional rights of speech, assembly, petition, and religion. *Id.* at 618, 104 S.Ct. at 3249–50. The appellant's argument is predicated on the first dimension only.

In its further elaboration of this first dimension, the Supreme Court indicated that the broad range of human relationships requires varying standards regarding the State's ability to regulate such interaction. Only those kinds of personal bonds that have played a critical role in the culture and traditions of the Nation and which emotionally enrich those closely tied together are entitled to a "substantial measure of sanctuary from unjustified interference by the State." *Id.* at 618, 104 S.Ct. at 3250. Such relationships are typically exemplified by family.

Obviously, the appellant's relationship with [LB] is not the kind of relationship the Supreme Court had in mind when it penned *Roberts.* Far from being closely tied to culture, tradition, family, and emotional enrichment, the more intimate appellant's relationship with [LB] became, the closer it approached illegality. Accordingly, appellant's relationship with [LB] does not qualify for this type of constitutional protection. Instead, the appellant must show that there was no rational connection between the order given him and proper service objectives and responsibilities. *United States v. Wine,* 28 M.J. 688, 690 (A.F.C.M.R.1989), *citing United States v. Dykes,* 6 M.J. 744 (N.C.M.R.1978).

We now turn to that issue. At trial, the military judge found that the order had a valid military purpose and entered the following findings of fact as to the governmental interests being enforced by the order:

A. That the accused not violate the law, such as by having a sexual relationship with a minor. This interest encompasses manifold ramifications including but not limited to good order and discipline, crew morale, maintenance of full crew complement, and the welfare of the accused himself.

B. That the Coast Guard's community relations not be damaged by having a Coast Guardsman seen in public with a minor with the appearance that they are a "couple".

C. That the Coast Guard not incur the wrath of the girl's mother, with its implications for public relations as well as the potential for command distraction.

In further explanation of her findings, the military judge indicated that interest A, standing alone, probably would not be sufficient reason to legitimize the order and that interest C adds little support. Interest B, however, in combination with both A and C, in the view of the military judge, is more than sufficient reason to justify the military's interference with the appellant's private rights and personal affairs. She finds support for her finding in that Article 134, UCMJ gives express recognition to this interest by providing for punishment for "conduct of a nature to bring discredit upon the armed forces." (Appellate Exhibit XI, p. 2).

We have examined the entire record and are unconvinced that the order to appellant had a sufficient nexus to proper military objectives and responsibilities. At the time of the order's issuance, appellant was described as having a "romantic" relationship with [LB] for about three weeks. The mother had personally gone to the WHITE LUPINE to seek the command's assistance in breaking up a relationship of which she disapproved. These facts, along with the Article 32, UCMJ testimony given by CWO Dilger at a hearing held in Rockland, Maine on 4–5 April 1995, provide a clear indication that a primary reason for the order being given was to satisfy the justifiable concerns of the mother. In other words, the Coast Guard was being asked to backstop a mother's efforts to correct the habits of her apparently wayward 14–year old daughter. While we sympathize, it is not the role of the military to employ its authority to achieve a private, non-military end for an individual having absolutely no connection to any of the armed services. While the mother's concerns may not have been the sole purpose for giving the order, it cannot be denied that they certainly played a major role in the decision to issue the order.

Next, it is also clear from CWO Dilger's Article 32, UCMJ testimony that the order was given to protect the appellant's best interests and to prevent possible future criminal conduct on his part. These are laudable motives but the method used to effect these motives was impermissible in our view. The purpose intended to be served here is quite similar to that described in *United States v. Wilson, 12 U.S.C.M.A. 165, 30 C.M.R. 165 (1961)* where the appellant was ordered "not to indulge in alcoholic beverages" because of his penchant for getting into trouble while intoxicated. The squadron commander testified that the order not to drink was given "for his own good ... for his protection and the best interests of the service," and to "prevent something similar ... happening again". *Id.* at 166. Judge Quinn wrote "[i]n the absence of circumstances tending to show its connection to military needs, an order which is so broadly restrictive of a private right of an individual is arbitrary and illegal." *Id.* at 166–167. *See also United States v. Wahl,* 4 C.M.R. 767 (A.B.R.1952), *United States v. Roach,* 26 M.J. 859 (C.G.C.M.R. 1988), *aff'd* 29 M.J. 33 (C.M.A.1989), and *United States v. Stewart,* 33 M.J. 519 (A.F.C.M.R.1991). While this order was not broadly restrictive, it is one which interferes with the appellant's personal rights and private affairs.

Thirdly, the government urges us to find the order valid based upon CWO Dilger's concern for maintaining a positive public image within the surrounding community. We recognize that keeping the reputation of a

military unit free from disrepute is a valid military concern. *United States v. Milldebrandt*, 8 U.S.C.M.A. 635, 25 C.M.R. 139, 142 (1958), *cited in United States v. Womack*, *supra*, at 633. What we find troubling, however, is how such an order can be justified on this basis when the exact nature of the "romantic" relationship between the appellant and [LB] apparently was never fully ascertained. What was meant by a "romantic" relationship? Was it a relationship where the appellant and [LB] were simply dating or had it progressed to one of sexual intimacies at the time the order was given? The evidence does not elaborate on this point. If the relationship was sexual in nature, the appellant could be charged under Article 134, UCMJ and under Maine law.[2] On the other hand, we doubt very seriously that a non-sexual, romantic relationship, even between a 25–year old Coast Guardsman and a 14–year old female, constitutes anything more than poor judgment. Without having better determined the true nature of the relationship, we do not feel the order can be justified on the basis of preserving the command's repute within the local community. Not finding a sufficient and reasonable nexus between the order and a military need, we find the order to be illegal.

Having decided that the order in this case did not have a valid military purpose, we wish to make clear that an order which effectively requires a service member to cease all contact with another individual, innocent or otherwise, is not, per se, patently illegal. As long as such an order furthers the valid military purposes of maintaining good order and discipline and/or protecting the well-being of unit members, such an order will be upheld. *United States v. Wine, supra*, (order not to have any contact with the dependent wife of another service member); *United States v. Hawkins*, 30 M.J. 682 (A.F.C.M.R.1990) (order not to have any contact, verbal or physical, with three named service members except through the Area Defense Counsel); *United States v. Button*, 31 M.J. 897 (A.F.C.M.R.1990) (order to stay away from family quarters and to have no contact with his step-daughter); *United States v. Flynn*, 34 M.J. 1183 (A.F.C.M.R. 1992) (order to cease all contact with female airman involved in his suspected fraternization). Unlike the case at bar, in each of these cases there was sufficient evidence showing an impact on good order and discipline, morale, or the well-being of unit members. In *Wine*, for example, the order had been issued only after counseling had failed, several on-base domestic disturbances involving the security police had taken place, and repeated interventions by his First Sergeant had failed. In the appropriate circumstances, such orders are valid. The facts of this case, however, did not rise to that level.

## II

Regarding appellant's second assigned error, he seeks to declare the convening authority's action a nullity because of the government's admitted failure to provide him with an authenticated copy of the record of trial. At trial, appellant requested that his copy of the authenticated record be personally served on him. In part as a result of the trial counsel's departure from active service, neither the appellant nor his defense counsel were ever served with an authenticated copy of the record of trial until well after the convening authority took action on 11 December 1995. Trial defense counsel did, however, examine an unauthenticated copy of the record of trial on 9 October 1995, one week before the record was authenticated by the military judge. He corrected some minor typographical and grammatical errors, as did the military judge prior to signing the DD Form 490 (Authentication of the Record of Trial). All corrections were of a non-substantive nature. Both the trial defense counsel and appellant were properly served with copies of the recommendation of the staff judge advocate, dated 7 November 1995, as required by R.C.M. 1106(f)(1). Prior to the convening authority taking action, an R.C.M. 1105 clemency petition was submitted by trial defense counsel, as was a personal letter from the appellant. Neither submission reserved in writing the right to submit additional matters as required by R.C.M.

---

**2.** Me.Rev.Stat.Ann.Tit. 17–A, § 254 makes it a crime for an individual age 19 or older to engage in a sexual act with another, not a spouse, who has attained the age of 14, but not 16.

1105(d)(2). Both submissions were considered by the convening authority before he took his action. At no time during this process did the trial counsel or appellant request a copy of the authenticated copy of the record of trial.

The facts surrounding this post-trial processing error are similar to a companion case, *United States v. Duckworth,* No. 1061, —— M.J. —— (C.G.Ct.Crim.App. 16 December 1996), recently decided by this Court. There, we held that absent prejudice to the appellant, there is no automatic right to have the convening authority's action declared a nullity simply because of a failure to serve the appellant with an authenticated copy of the record of trial. We see no reason to decide this case any differently. As stated in *Duckworth,* it is insufficient to merely show that the error has occurred. Rather, the test is whether the appellant has been prejudiced by the government's failure to so serve him as required by Article 54(d), UCMJ and R.C.M. 1104(b). *United States v. DeGrocco,* 23 M.J. 146 (C.M.A.1987). Under the facts of this case, no such harm is apparent nor has any been alleged. Both the trial defense counsel and the appellant submitted separate clemency petitions. Each was submitted following service of the staff judge advocate's recommendation which contained a statement to the effect that appellant had been provided a copy of the record on 13 September 1995 through his defense counsel. Finally, the convening authority noted in writing that he considered both clemency petitions when he took his action. We can find no harm to appellant under these circumstances.

### III

Finally, appellant has assigned as error that this Court lacks jurisdiction to act in this case because of the service on the Court of a civilian judge who has not been appointed in accordance with the Appointments Clause of the Constitution and that the memorandum reappointment of that judge by the Secretary of Transportation is ineffective, The Court of Appeals for the Armed Forces in *United States v. Ryder,* 44 M.J. 9 (C.M.A.1996), has determined the appointment by the Secretary of Transportation to be authorized by Congress and consistent with the Appointments Clause of the Constitution, which resolves this assignment against appellant.

In agreeing only with the first assignment of error, the findings of guilty to Charge I, violation of Article 90, UCMJ, and the specification thereunder are set aside and dismissed. The findings of guilty to Charge II, violation of Article 92, UCMJ, and the specification thereunder, and Charge IV, violation of Article 134, UCMJ, and the specification thereunder, are affirmed. The sentence has been reassessed and upon reassessment we are confident that the military judge would not have imposed a sentence less than the one approved by the convening authority. We also find that sentence to be appropriate for this accused and the affirmed offenses. Accordingly, the sentence as approved by the convening authority is affirmed.

Chief Judge BAUM concurs.

O'HARA, Judge (dissenting in part and concurring in part):

I disagree with the lead opinion's conclusion that the order in Charge I is invalid under the circumstances.

The appellant, a 25–year old male at the time, had become involved with a 14–year old girl. The relationship had gone beyond being a platonic one. The girl's mother made it very clear to the appellant's commanding officer, via the duty officer, that she was opposed to the romantic relationship continuing. She had advised that "... if it continued, it's going to be taken a lot further...." AE IV at p. 5. In response, appellant's commanding officer advised him of the girl's actual age and ordered him to cease all contact with this 14–year old. In other words, the girl was placed completely "off limits" to the appellant. Subsequently, the appellant was charged with violating the "off limits" order, as well as violating a station order, prohibiting guests (i.e., the 14–year old and her 13–year old friend) in the barracks between taps and reveille, and committing indecent acts with the 13–year old girlfriend of the 14–year old, all at U.S. Coast Guard Station Rockland, Maine, on 14 January 1995. He pled and was found guilty of those

three charges, but he preserved for appeal his challenge to the validity of the "off limits" order.

I agree with the majority that romantic relations between minors and adults are not Constitutionally protected, particularly when the probable result of such inappropriate relationships is illegal sexual conduct. Cf. *U.S. v. Henderson,* 34 M.J. 174 (C.M.A.1992). Sexual abuse of a minor by an adult, whether or not it is with the minor's ineffective consent, is unprotected criminal conduct. See *Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986). To suggest that a romantic relationship between an aggressive minor and an immature young adult, which is being conducted on the sly, will not eventually lead to sexual activity is to ignore basic human nature.

As the lead opinion notes, there is judicial recognition that interpersonal relations may be curtailed in the interest of preventing evident criminal conduct on military reservations. *U.S. v. Flynn,* 34 M.J. 1183 (A.F.C.M.R.1992) (order to cease all contact with female airman with whom the accused was suspected of fraternizing); *U.S. v. Button,* 31 M.J. 897 (A.F.C.M.R.1990) (order to stay away from his base family quarters and to have no contact with his step-daughter who the accused was allegedly sexually abusing); *U.S. v. Hawkins,* 30 M.J. 682 (A.F.C.M.R.1990) (order not to have any contact, verbal or physical, with three named service members, except through defense counsel; accused violated the order by contacting one of the named members who he had physically abused in the past and had also pressured to cover up a theft); *U.S. v. Wine,* 28 M.J. 688 (A.F.C.M.R.1989) (order to a married, but separated, member not to have any contact with the wife of another service member, even though they may be separated, where both members lived on base). In fact, a command's failure to act when it was in a position to prevent likely known criminal conduct would justifiably subject it to criticism. The deleterious impact of criminal activity within the command on its mission, morale, discipline, and usefulness of its members is patent. Besides the burdens of dealing with a military or civilian

prosecution and the potential loss of manpower until a qualified replacement is found, there are the efforts necessary to damage control the possible public relations fallout. And, if the public affairs aspects get out of hand, it further diverts resources from the command's primary missions. The command's reputation can suffer as a result of a few bad apples, which can also undermine the morale of the law-abiding members who did nothing to warrant the public opprobrium. If the reputation becomes, like in this case, that the Service is incapable of controlling inappropriate sexual relationships within its units, then parents may question the advisability of their sons and daughters joining such a Service. Moreover, while larger military units may be able to easily weather some loss of community support, most Coast Guard units are small and less autonomous and rely on the local community support to accomplish their missions. Therefore, I agree with the Military Judge's conclusion that there was a sufficient military purpose to support the "off limits" order. The fact that it may have also benefited the mother in controlling her wayward daughter does not undermine the order's otherwise valid military purpose. And, since the appellant was not charged with violating the order off base in the community, we need not address whether the order in those circumstances still has a sufficient military purpose. *U.S. v. Womack,* 29 M.J. 88, 91 (C.M.A.1989) ("Because appellant is not charged with violating the order in this way, we need not consider these aspects here. In this case, the military context is obvious: Appellant is not entitled to relief based upon other, hypothetical conduct." Citations omitted.); see also *U.S. v. Dumford,* 30 M.J. 137 (C.M.A.1990) (valid military necessity existed to require the accused to warn civilians, as well as service members, that he was an HIV carrier).

I do note that the record is unclear as to how and when the appellant violated the order in question at Station Rockland, Maine, on 14 January 1996. Since his initial contact with the 14–year old on board the cutter was not the result of any action on his part, the appellant could not be faulted for this encounter with the young girl. However, it is clear in the record from his subsequent ac-

tions that at some point, the appellant was not taking reasonable steps to extract himself from the situation, but was pursuing a course of conduct that was intended to rekindle the inappropriate relationship, clearly in violation of the "off limits" order. Therefore, I find the appellant's plea of guilty to Charge I provident.

I agree with the majority's disposition of the other issues raised by appellant. Consequently, I would hold the findings and sentence as correct in law and fact and affirm the findings of guilty and sentence as approved below.